[Cite as *State v. Roberts*, 2017-Ohio-481.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2016-CA-8 |
| | : | |
| v. | : | T.C. NOS. 15CR293 and 16CR90 |
| | : | |
| KYLE J. ROBERTS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___10th___ day of _____February_____, 2017.

. . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, 200 N. Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

RENEE D. BUSSE, Atty. Reg. No. 0092823, 123 Market Street, P. O. Box 910, Piqua, Ohio 45356
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Kyle J. Roberts appeals from a judgment of the Champaign County Court of Common Pleas, which revoked his community control in two cases and sentenced him to 11 months and 7 months in prison, respectively, to be served consecutively for a total of 18 months in prison. On appeal, Roberts claims that the trial court violated his due process rights and abused its discretion in revoking his community control. For the

following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} In January 2016, in Case No. 2015 CR 293, Roberts pled guilty to possession of heroin and theft, both felonies of the fifth degree. The trial court later sentenced him to two years of community control and notified him that, if he violated the conditions of his community control, the court could sentence him to a longer term under the same restrictions, could impose more restrictive sanctions, or sentence him to 11 months on each count, to be served concurrently. Roberts's driver's license was suspended for six months, and he was ordered to pay court costs, legal fees, and a $250 fine.

{¶ 3} On March 10, 2016, in Case No. 2016 CR 90, Roberts was charged by complaint in municipal court with possession of fentynal, in violation of R.C. 2925.11(A)/(C)(1)(a), a fifth-degree felony; possession of drug abuse instruments, a first-degree misdemeanor; and possession of drug paraphernalia, a fourth-degree misdemeanor.

{¶ 4} On March 23, 2016, Roberts's probation officer filed a Notice of Supervision Violation, indicating that Roberts had violated the conditions of his community control in Case No. 2015 CR 293 in several respects. The probation officer alleged that Roberts (1) had used heroin and morphine, (2) had possessed heroin, Fentanyl, and drug paraphernalia, and (3) had associated with an individual with whom he was not supposed to associate.

{¶ 5} A preliminary hearing on the community control violations was held on March 25, 2016. At the time, Roberts, represented by counsel, did not contest that there was

probable cause to believe that he had violated the terms of his community control.

{¶ 6} On April 5, 2016, the trial court held a hearing on the alleged community control violations in Case No. 2015 CR 293 and on the new charges in Case No. 2016 CR 90. In Case No. 2016 CR 90, Roberts waived an indictment and pled guilty to two counts of possession of drugs, both fifth-degree felonies. The plea agreement stated that (1) the State would ask for a prison term of no more than 10 months, (2) the State would ask for the two counts to be served concurrently, but consecutively to Case No. 2015 CR 293, (3) the State would not be bound to its recommendations if Roberts violated the terms of his bond or committed another offense before sentencing, and (4) Roberts would agree to admit to the community control violations in Case No. 2015 CR 293. The trial court accepted Roberts's plea and sentenced him to three years of community control and a six-month driver's license suspension.

{¶ 7} With respect to Case No. 2015 CR 293, Roberts did not contest the merits of the alleged community control violations; the trial court continued Roberts on community control and extended the control period until April 5, 2019.

{¶ 8} As part of the court's community control sanctions, the trial court included, in both cases, the "special condition" that Roberts "successfully gain admission to, and complete, the West Central Community Based Correctional Facility residential program." Roberts was further required to successfully complete any program recommended by the West Central Incentive Program upon his release from West Central.

{¶ 9} The trial court notified Roberts of the consequences he faced in both cases if he violated the terms of his community control. The trial court indicated that, if the court revoked Roberts's community control, it would sentence him to 11 months in prison on

each count in Case No. 2015 CR 293, to be served concurrent with each other and consecutively to the sentence imposed in Case No. 2016 CR 90. The court also stated that it would impose 7 months in prison on each count in Case No. 2016 CR 90, to be served concurrently with each other and consecutively to the sentenced in Case No. 2015 CR 293.

{¶ 10} On April 27, 2016, the trial court filed a "Journal Entry Setting Hearing on Community Control Violation." The entry stated that, on April 26, the court received an "Interview Rejection Report" from West Central, setting forth the facility's rejection of Roberts's admission to the program. The court stated that it "finds the Defendant's non-admission to the Facility to be an allegation that he violated his community control supervision, to wit: failing to successfully gain admission to the West Central Community Based Correctional Facility." The court set a community control violation hearing for April 29, 2016.

{¶ 11} After a hearing on April 29, the trial court found that Roberts "did not contest the merits of violation * * * and that the merits of the Community Control Violation existed because: * * * Defendant failed to successfully gain admission to the West Central Community Based Correctional Facility." In a single judgment entry addressing both Case No. 2015 CR 293 and 2016 CR 90, the trial court revoked Roberts's community control in both cases, and it imposed the aggregate 18-month sentence. The court informed Roberts that, upon his release from prison, he could be subject to up to three years of post-release control, at the discretion of the Adult Parole Authority. The trial court indicated that Roberts had 102 days of jail time credit as of April 29, 2016.

{¶ 12} Roberts appeals from the revocation of his community control. In his first

assignment of error, he claims that the trial court denied him "a right to minimum due process by revoking his community control despite his attempts to present a defense." In his second assignment of error, he claims that the trial court "abused its discretion by revoking [his] community control."

## II. Mootness

{¶ 13} Roberts did not seek a stay of his sentence either in the trial court or in this court. Thus, before we address the merits of his assignments of error, we must consider whether his appeal of the revocation of his community control is moot.

{¶ 14} Upon the revocation of his community control, Roberts was sentenced to 18 months in prison, and he had 102 days of jail time credit as of his sentencing date (April 29, 2016). A review of the ODRC website reflects that Roberts is no longer incarcerated. Roberts is currently subject to a three-year period of post-release control under the supervision of the Adult Parole Authority.

{¶ 15} We have stated that an appeal from the prison sentence imposed upon the revocation of community control is moot where the defendant "has served that prison sentence, and *there is no indication that [the defendant] is on post-release control or is subject to collateral liability.*" (Emphasis added.) *State v. Bailey*, 2d Dist. Montgomery No. 26882, 2016-Ohio-5158, ¶ 12. Here, although Roberts has completed his prison sentence, Roberts is serving three years of post-release control, which subjects him to numerous conditions and consequences if he violates the conditions of his post-release control. In light of his placement on post-release control, we conclude that Roberts's appeal is not moot, even though he completely served the prison sentence imposed by the trial court.

### III. Revocation of Community Control

{¶ 16} In his assignments of error, Roberts claims that the trial court denied him due process and abused its discretion in revoking his community control sanctions.

{¶ 17} "The right to continue on community control depends upon compliance with community control conditions and is a matter resting within the sound discretion of the court. Accordingly, we review the trial court's decision to revoke a defendant's community control for an abuse of discretion. Abuse of discretion has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Internal citations omitted.) *State v. Lewis*, 2d Dist. Montgomery No. 23505, 2010-Ohio-3652, ¶ 11; *State v. Ireland*, 2d Dist. Champaign No. 2015-CA-12, 2016-Ohio-1421, ¶ 11.

{¶ 18} "A defendant is entitled to certain due process protections before a court may revoke community control sanctions, although the full panoply of rights due a defendant in a criminal prosecution does not apply to the revocation of community control." *State v. Harmon*, 2d Dist. Champaign No. 2007-CA-35, 2008-Ohio-6039, ¶ 6, citing *Morrissey v. Brewer*, 408 U.S. 471, 480, 93 S.Ct. 2593, 33 L.Ed.2d 484 (1972). First, a defendant is entitled to a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his or her community control. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *State v. Blakeman*, 2d Dist. Montgomery No. 18983, 2002-Ohio-2153. Second, due process requires a final hearing to determine whether community control should be revoked. *Id.*

{¶ 19} "At the final revocation hearing, the State must (1) provide the [defendant] with written notice of the alleged violations of [community control]; (2) disclose the

evidence against him; (3) give the [defendant] an opportunity to be heard in person and to present witnesses and documentary evidence; (4) allow him to confront and cross-examine adverse witnesses; (5) afford him a neutral and detached hearing body; and, (6) provide the [defendant] with a written statement by the fact finder as to the evidence relied upon and the reasons for revoking [community control]." *State v. Gilreath*, 2d Dist. Greene No. 2000-CA-1, 2000 WL 896319, * 2 (July 7, 2000); *State v. Klosterman*, 2d Dist. Darke Nos. 2015-CA-9, 2015-CA-10, 2016-Ohio-232, ¶ 15. The failure to object to a due process violation during a community control revocation hearing waives all but plain error. *Klosterman* at ¶ 15.

{¶ 20} Because a community control violation hearing is not a criminal trial, the State need not prove a violation beyond a reasonable doubt. *State v. Cofer*, 2d Dist. Montgomery No. 22798, 2009-Ohio-890, ¶ 12. "The State need only present substantial evidence of a violation of the terms of a defendant's community control." *Id.*

{¶ 21} The trial court revoked Roberts's community control due to his failure to be admitted to West Central. At the beginning of the merits hearing, the trial court asked counsel, "Does your client acknowledge the non-admission?" Defense counsel responded, "He does." Roberts was placed under oath, and the court conducted a plea-type hearing regarding the merits of the allegations against Roberts. As part of the colloquy, the following exchange occurred:

THE COURT: Do you have any defense to the charge, meaning any reason you should be found not guilty?

[ROBERTS]: No, sir.

THE COURT: Are you admitting then that you failed to successfully gain

admission to the West Central Community Correctional Facility as outlined in the Interview Rejection Report received by the Court on April 26, 2016?

[DEFENSE COUNSEL]: Your Honor, I think my client would acknowledge he failed to gain admission. He has some questions about the justifications or reasons set forth. But he'll acknowledge he failed to complete admission.

THE COURT: Thank you. Did you hear what your lawyer said?

[ROBERTS]: Yes, sir.

THE COURT: You'll have the opportunity to present mitigation evidence. Meaning, reasons why certain things happened. And the Court will take that into consideration in evaluating the severity of the community control violation.

With that being said, I'm not interested at this point why certain things happened. We want to determine did something happen. And what we want to determine is did you fail to successfully gain admission to the West Central Community-Based Correctional Facility?

[ROBERTS]: Okay.

THE COURT: And what is your answer to this?

[ROBERTS]: Yes, sir.

THE COURT: Thank you. The Court has reviewed the community control complaint and admissions of the Defendant. Court finds the Defendant guilty of the community control violation. We'll proceed to disposition.

{¶ 22} During the disposition portion of the hearing, the State informed the court

that Roberts was not admitted to West Central based on a report from the Tri-County Regional Jail nurse that Roberts had a history of "cheeking" his medication. The prosecutor further stated that he was not aware of "any other options this Court has for this Defendant" and noted that Roberts had violated his community control on two prior occasions in Case No. 2015 CR 293 and once in Case No. 2016 CR 90.

{¶ 23} Defense counsel responded to the State's argument, stating that Roberts "would respectfully disagree with some of the reasons set forth as to the non-admission." Counsel argued:

* * * [Roberts] would certainly deny cheeking his medication. Certainly deny any kind of refusal to take his medication. He had a minor heart attack, I believe, about six months ago. And he has no reason whatsoever to avoid medication like this, Your Honor. The Plavix and Lisinopril. I can't imagine why he would avoid that. And he has assured me he's not avoiding this.

I'm not sure exactly what is going here. But this, quite frankly, doesn't make a whole lot of sense that he would refuse to take his medication, Your Honor. I would suggest to the Court that he is insistent that is not the case. Makes more sense than refusing to take the medication. This is not a medication involving mental health. Typically when we get these cases involving people refusing to take medication, it is involving some sort of psychotropic drug. This is not what these are. These are involving his heart condition. He has no reason whatsoever to avoid taking them. I'm not exactly sure why this is the report in the case

we have here.

I would suggest to the Court that he still is an excellent candidate for community control. And I would ask the Court to consider that as a first alternative as opposed to sending him to prison. Thank you.

{¶ 24} The trial court next asked Roberts if he would like to say anything. Roberts denied that he "cheeked" his medication; he stated that, without the medication, he could have "another severe heart attack and die." When the court asked "what would be the incentive for the jail nurse," Roberts stated that the nurse had gotten upset with him when he put in "kites" for his medication (which he said he was not receiving) and asked for a reduced-salt diet.

{¶ 25} After this exchange with Roberts, the court asked defense counsel if he knew of another in-patient facility where Roberts could go. Defense counsel replied that he would inquire and that Roberts had suggested Maryhaven in Urbana. The trial court responded that "Maryhaven won't take our residents." Defense counsel told the court that Roberts was "open to any inpatient facilities that the Court is willing to send him to."

{¶ 26} As stated above, the court revoked Roberts's community control and sentenced him to prison. The court stated orally and in its judgment entry that it had re-reviewed the presentence investigation report, statements of counsel, Roberts's statements, and the court's interaction with Roberts, and that it had considered the purposes and principles of sentencing in R.C. 2929.11, the factors set forth in R.C. 2929.12, and the criteria for consecutive sentences in R.C. 2929.14(C)(4). The court expressly found that Roberts "is not amenable to an available community control sanction. Defendant was rejected for admission to the residential treatment facility based on his

conduct."

{¶ 27} On appeal, Roberts claims that he was denied due process when the trial court did not allow him to present "a defense" to the alleged violation. Under the circumstances before us, there was no due process violation. Roberts was informed in writing of the allegation against him, i.e., that he had failed to be admitted to West Central, and he repeatedly told the court that he was not contesting the non-admission. Even assuming that the jail nurse's report to West Central was incorrect, that fact would not have negated West Central's rejection of Roberts. And, prior to the revocation of his community control, Roberts was given a full and complete opportunity to challenge the basis for his non-admission to West Central and to argue that his community control should not be revoked.

{¶ 28} The trial court also did not abuse its discretion in revoking Roberts's community control on April 29, 2016. The parties both acknowledged that Roberts has a "significant substance abuse problem," which included the use of marijuana, opiates, and heroin. In February 2016, when Roberts was initially sentenced in Case No. 2015 CR 293, Roberts indicated that his time in jail (pretrial confinement) had been good for him and "got me clean." The court placed Roberts on community control with outpatient drug treatment.

{¶ 29} Roberts committed new drug offenses shortly after being placed on community control; his attorney sought inpatient drug counseling. The State had argued for revocation of Roberts's community control at that time, based on allegations that Roberts had been found attempting to roll a marijuana cigarette in jail. Roberts disputed that allegation and emphasized that his two drug tests in jail were negative for marijuana.

The court continued Roberts on community control on April 5, 2016, noting that Roberts had never been placed in a residential treatment program and that he had passed two urine screens while at the jail.

**{¶ 30}** When the trial court revoked Roberts's community control, Roberts had not been admitted to the residential drug treatment program (a special condition of his community control), the court was not aware of any alternative inpatient treatment programs for Roberts, and the court was aware that Roberts had previously gotten and stayed "clean" while incarcerated. Roberts had not been successful with an outpatient treatment program. Given the information before it, the trial court did not abuse its discretion in revoking Roberts's community control and imposing a prison sentence.

**{¶ 31}** Roberts's assignments of error are overruled.

### IV. Conclusion

**{¶ 32}** The trial court's judgment will be affirmed.

. . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Jane A. Napier
Renee D. Busse
Hon. Nick A. Selvaggio