[Cite as *State v. Ross*, 2026-Ohio-989.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
UNION COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

MICHAEL LEE ROSS,

    DEFENDANT-APPELLANT.

CASE NO. 14-25-35


OPINION AND
JUDGMENT ENTRY


Appeal from Union County Common Pleas Court
Trial Court No. 24 CR 214

Judgment Affirmed

Date of Decision: March 23, 2026


APPEARANCES:

    *Alison Boggs* for Appellant

    *Raymond Kelly Hamilton* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Michael Lee Ross ("Ross"), appeals the July 24, 2025 judgment of the Union County Court of Common Pleas terminating his community control supervision and ordering to him to serve a prison term after finding that he violated the terms of his community control. For the reasons that follow, we affirm.

{¶2} On September 27, 2024, the Union County Grand Jury indicted Ross on three counts: Count One of trafficking in cocaine in violation of R.C. 2925.03(A)(1), (C)(4)(c), a fourth-degree felony; Count Two of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(b), a fourth-degree felony; and Count Three of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), (B)(1), a second-degree felony. At his arraignment on October 22, 2024, Ross entered pleas of not guilty and was released on a personal recognizance bond.

{¶3} On January 16, 2025, the Union County Common Pleas Court held a pretrial and bond violation hearing. At this hearing, the court was informed that Ross tested positive for cocaine on two occasions, a violation of his bond conditions. The court therefore revoked Ross's bond.

{¶4} At a hearing on March 11, 2025, pursuant to a negotiated-plea agreement, Ross withdrew his not-guilty pleas and entered guilty pleas to Count One and Count Two as charged in the indictment and amended Count Three, attempted engaging in a pattern of corrupt activity in violation of R.C. 2923.02 and 2923.32 (A)(1), (B)(1), a third-degree felony, a lesser-included offense. The trial court accepted Ross's pleas and found him

guilty. On April 24, 2025, the trial court held a sentencing hearing where the court placed Ross on community control supervision for a period of five years. The court journalized its entry the next day.

{¶5} On July 11, 2025, Ross's supervising probation officer, Joshua Hunt ("Probation Officer Hunt"), of the Union County Probation Department submitted a notice of alleged community control violations to the Union County Common Pleas Court. Ross was timely served with a copy of the notice containing the alleged violations, an affidavit of indigency for the appointment of counsel, and an explanation of his rights. Ross appeared on July 24, 2025 for a hearing on the community control violation charges. Ross denied the violations and elected to go forward with an evidentiary hearing. The trial court found that Ross violated the terms of his supervision, terminated Ross's community control, and imposed the balance of his previously reserved 41-month prison sentence.

{¶6} On August 22, 2025, Ross filed a notice of appeal. He raises two assignments of error for our review. To facilitate our resolution of the case, we will discuss the assignments of error in reverse order.

## Second Assignment of Error

**The Trial Court's decision to revoke Appellant's community control is against the manifest weight of the evidence.**

{¶7} In his second assignment of error, Ross argues the trial court's finding that he violated the terms of his community control is against the manifest weight of the evidence.

Ross's argument seems to challenge whether the State presented substantial evidence of the community control violation.

**{¶8}** "The decision of a trial court finding a community-control violation will not be disturbed absent an abuse of discretion." *State v. Wallace*, 2023-Ohio-676, ¶ 11 (3d Dist.). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶9}** A hearing on a community control violation is not a criminal trial and the State is not obligated to prove a violation of the conditions of community control beyond a reasonable doubt. *Wallace* at ¶ 12, citing *State v. Roberts*, 2017-Ohio-481, ¶ 20 (2d Dist.). Instead, the State need only present substantial evidence that the offender violated the terms of his or her community control sanctions. *Id.*, citing *State v. Boykins*, 2015-Ohio-1341, ¶ 20 (3d Dist.). "Substantial evidence is akin to a preponderance-of-the-evidence burden of proof." *State v. Burdette*, 2011-Ohio-4425, ¶ 26 (5th Dist.), citing *State v. Ohly*, 2006-Ohio-2353, ¶ 18 (6th Dist.).

**{¶10}** The trial court heard testimony regarding four alleged violations of Ross's community control. The uncorroborated testimony put on by the State with regard to the first three violations was exceptionally brief and limited in detail.

**{¶11}** However, the record shows that for Ross's fourth violation that, "[t]he defendant has associated with people who have a criminal background and/or who could

influence him to engage in criminal behavior", the State presented evidence of messages that were found on Ross's phone ("State's Exhibit 1") and claimed the messages demonstrated Ross was using his phone to discuss and arrange drug transactions. In support of this violation, Probation Officer Hunt prepared a summary of the messages relating to drug activity that was introduced as State's Exhibit 1. He also testified regarding the contents and accuracy of the document.

**{¶12}** At the hearing Probation Officer Hunt testified as to the facts of this violation.

| [State]: | What is the basis for violation number four? |
|---|---|
| [Hunt]: | I still have his phone in my possession. And I have at least six pages detailing continued drug trafficking. We've ran the numbers for the people in his phone and they return to individuals who have criminal records. |
| … | |
| [State]: | I'm going to hand you what's been marked as State's Exhibit 1. Will you take a look at this and tell me when you're done. |
| [Hunt]: | I've reviewed it. |
| [State]: | Do you recognize that? |
| [Hunt]: | I do. |
| [State]: | What is that? |
| [Hunt]: | This would be the Word document that I created as I was reviewing Mr. Ross' phone. |

| | |
|---|---|
| [State]: | Obviously those aren't pictures of his text messages. But did you truly and accurately transcribe what was on the phone onto the page? |
| [Hunt]: | I took quite a bit of time looking through it and I differentiated dates, names of people, phone numbers, whether or not it was texting or whether or not it was from a Facebook messenger. |
| [State]: | Did you change or alter the contents of what was on the phone to what was in that page in any way? |
| [Hunt]: | I did not. |
| [State]: | It was straight from the phone to the page exactly as written? |
| [Hunt]: | It would not be as written. It would be as close to it because there was sometimes not a necessity to, I guess, transcribe the whole thing. |

(July 24, 2025 Tr. at 16-17).

{¶13} Ross contends this testimony and the summaries of his phone conversations are insufficient to show that he was associating with people who have a criminal background and/or who could influence him to engage in criminal behavior. (Appellant's Brief at 8). We disagree.

{¶14} The messages found on Ross's phone clearly demonstrate illicit drug activity. Probation Officer Hunt testified that State's Exhibit 1 "details people asking for specific amounts [of drugs], talking about being fronted things, talking about weights, telling the defendant to use gloves when he's weighing things up, asking for Gabapentin." (July 24, 2025 Tr. at 17-18). For instance, Probation Officer Hunt documented in State's Exhibit 1 a text exchange on May 29, 2025, "Asks how much for 8 ball. Def says 220. They ask to

-6-

pay 180. Def says 200 because of his quality. He tells them he is risking as he is driving and has 3.5 years over his head. They ask for 2gs. They bicker but agree to amount and weight." (State's Exhibit 1). Another excerpt describing an exchange on June 25, 2025 says, "Def tells person to send money to someone and they can buy it already cooked up. He will either give them money back or a bag. They talk about selling a bag and how girl knows def still sells." (State's Exhibit 1). Additionally, the exhibit details a June 10, 2025 text-message exchange saying, "They want a 30. Agree to meet. Def on phone and says he needs person to do it as he doesn't want wife to know 'I'm still doing this'". (State's Exhibit 1).

{¶15} In spite of the messages on Ross's phone demonstrating his association with persons of an unsavory character, Ross argues, "There was no evidence that Mr. Ross was ever seen with any individuals with criminal backgrounds, discussing or completing drug deals; no evidence of drugs or illegal contraband on Mr. Ross or pictures on his phone; no one came in [and] testified that he/she had contact with Mr. Ross for the purpose of entering some sort of drug transaction;…and Mr. Ross has not be arrested for drug trafficking." (Appellant's Brief at 8). Contrary to Ross's assertions, we find the text messages sufficiently demonstrate the alleged violation of community control. Additional evidence was unnecessary. It was readily apparent Ross was continuing in his illicit drug activity and therefore associating with people who have a criminal background or who could influence him to engage in criminal behavior in violation of his community control.

{¶16} Ross also takes issue with the trial court's reliance on the State's representation that he was the person who authored the text messages. (Appellant's Brief at 8-9). At the hearing, Probation Officer Hunt was asked on cross-examination whether other people had access to Ross's phone, which he admitted he did not know. (July 24, 2025 Tr. at 23-24). We reiterate that the State did not have to establish that Ross violated his community control beyond a reasonable doubt but only by a standard that is akin to a preponderance of the evidence.

{¶17} At a community-control-revocation hearing, the trial court, being in the better position to observe the witnesses and hear their testimony, is entitled to deference on issues of witness credibility and weight of the evidence. *State v. Boykins*, 2015-Ohio-1341, ¶ 27 (3d Dist.). In the present case, we find the trial court was in the better position to assess the credibility of the witness and weight of the evidence. The trial court apparently chose to believe the testimony presented by Probation Officer Hunt and found that Ross violated the terms of his community control.

{¶18} We find the trial court's determination that Ross violated the terms and conditions of his community control by associating with people who have a criminal background and or who could influence him to engage in criminal behavior was supported by substantial evidence. Though the record shows there was scant evidence presented for violations one through three, the evidence presented with regard to violation four is more than sufficient to support the trial court's finding that Ross violated the terms and conditions of his community control supervision. Having determined that substantial

evidence supports the trial court's finding that Ross violated his community control, we additionally find that the trial court did not abuse its discretion nor act contrary to law by finding that Ross had violated his community control.

{¶19} Ross's second assignment of error is overruled.

### First Assignment of Error

**The Trial Court violated Appellant's due process rights by not allowing him to confront witnesses as guaranteed by the Fourteenth Amendment.**

{¶20} Ross argues in his first assignment of error that State's Exhibit 1 presented during the testimony regarding the fourth violation constitutes hearsay and use of this exhibit without presenting the phone to determine the accuracy of the exhibit deprived Ross "the opportunity to confront the evidence". (Appellant's Brief at 4).[1]

{¶21} The Ohio Supreme Court outlined the minimum due process requirements for revocation of community control. The Court adopted these principles from the United States Supreme Court case *Morrissey v. Brewer*. These requirements include:

> "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

---

[1] We do not need to consider Ross's challenges to Probation Officer Hunt's hearsay testimony regarding the first three violations, focusing instead on the fourth alleged violation.

*State v. Miller*, 42 Ohio St.2d 102, 104 (1975), quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

**{¶22}** Hearsay evidence is admissible at a community control revocation hearing as these hearings are not subjected to the rules of evidence. Ohio Evid. R. 101(D)(3). "'The rationale for the exception is that, since a probation revocation hearing is an informal proceeding, not a criminal trial, the trier of fact should be able to consider any reliable and relevant evidence to determine whether the probationer has violated the conditions of his probation.'" *State v. Ryan*, 2007-Ohio-4743, ¶ 9 (3d Dist.), quoting *Columbus v. Bickel*, 77 Ohio App.3d 26, 36 (10th Dist. 1991). "Nevertheless, the admission of hearsay evidence at a probation revocation hearing can compromise the probationer's due process right to confront adverse witnesses…" *Ohly*, 2006-Ohio-2353, at ¶ 21. An adverse witness is, "a person who has given adverse information on which parole revocation is to be based". *Morrissey* at 487.

**{¶23}** Ross argues that the document created by Probation Officer Hunt "deprived Mr. Ross the opportunity to confront the evidence." (Appellant's Brief at 4). In *State v. Miller*, the State called a probation officer to testify to records created by the appellant's original probation officer who was no longer employed by the department. *Miller* at 106. The Court held that, "by permitting a probation officer who did not prepare the entries for appellee's probation department record to testify as to the contents of that record, the trial court denied appellee his 'right to confront and cross-examine adverse witnesses.'" *Id.* That is not the case here. Probation Officer Hunt prepared the document presented as

State's Exhibit 1 and testified to its accuracy. The record reflects that Ross had an adequate opportunity to cross-examine Probation Officer Hunt regarding the document he created. (July 24, 2025 Tr. at 23-25). Thus, the due process requirements for revocation of community control are satisfied.

**{¶24}** Though Ross questions the accuracy of the document Probation Officer Hunt created, the trial court had the opportunity to assess the credibility and reliability of the evidence presented. We find no error in the trial court's determination that the evidence was reliable.

**{¶25}** Ross's first assignment of error is overruled.

**{¶26}** For the foregoing reasons, Ross's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Union County Court of Common Pleas.

***Judgment Affirmed***

**WILLAMOWSKI, and WALDICK, J. J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

Mark C. Miller, Judge

John R. Willamowski, Judge

Juergen A. Waldick, Judge

DATED:
/jlm