[Cite as *State v. Norman*, 2018-Ohio-993.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 2017-CA-40; |
| | : | 2017-CA-41 |
| v. | : | |
| | : | Trial Court Case Nos. 2014-CR-312; |
| GEORGE C. NORMAN, JR. | : | 2016-CR-556 |
| | : | |
| Defendant-Appellant | : | (Criminal Appeal from |
| | : | Common Pleas Court) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of March, 2018.

. . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45501
 Attorney for Plaintiff-Appellee

MICHAEL T. COLUMBUS, Atty. Reg. No. 0076799, 130 W. Second Street, Suite 2103, Dayton, Ohio 45402
 Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} In this consolidated appeal, George C. Norman, Jr., appeals from two judgments of the Clark County Court of Common Pleas, which (1) found him guilty on his guilty plea to having weapons while under disability and sentenced him to 36 months in prison, among other sanctions (Case No. 2016-CR-556), and (2) revoked his community control for possession of cocaine and sentenced him to 30 months in prison (Case No. 2014-CR-312), to be served consecutively to the sentence in Case No. 2016-CR-556.

{¶ 2} Norman challenges the trial court's judgments on the ground that the trial court misinformed him at the plea/admissions hearing of the possible prison term he faced for the community control violations. He also claims that the record clearly and convincingly fails to support the imposition of a maximum 36-month sentence for having weapons while under disability and the imposition of consecutive sentences.

{¶ 3} For the following reasons, the trial court's judgment in Case No. 2016-CR-556 will be affirmed. The trial court's judgment in Case No. 2014-CR-312 will be reversed in part, and the matter will be remanded for imposition of a new sentence not to exceed two years in prison.

### I. Procedural History

{¶ 4} In April 2014, in Case No. 2014-CR-312, Norman was indicted for possession of cocaine in an amount equal to or greater than 10 grams, but less than 20 grams, in violation of R.C. 2925.11(A), a third-degree felony; the indictment included a forfeiture specification. Norman pled guilty to the charge and agreed to the forfeiture. At the plea hearing, the trial court informed Norman that he was eligible for community control, and that if he violated community control, the court could impose, among other sanctions, a

36-month prison sentence.

{¶ 5} On September 30, 2014, the trial court orally sentenced Norman to five years of community control. At both the sentencing hearing and in the court's subsequent October 3, 2014 judgment entry, the trial court indicated that Norman faced 30 (not 36) months in prison if he violated community control.

{¶ 6} On September 6, 2016, a Clark County probation officer filed an affidavit with the trial court, stating that Norman had violated the terms of his community control by (1) committing "a felony offense by being in possession of drugs, possession of a firearm and trafficking in drugs on or about the 2nd day of September," (2) failing to report a change of address to his probation officer, and (3) failing to pay his fine and costs, as ordered. The trial court held a hearing on September 7, during which Norman waived a probable cause hearing and requested a hearing on the merits of the violation.

{¶ 7} On November 14, 2016, Norman was indicted in Case No. 2016-CR-556 for possession of cocaine (less than five grams), a felony of the fifth degree; trafficking in cocaine, a felony of the fourth degree; and having weapons while under disability, a felony of the third degree. The indictment included a forfeiture specification concerning a firearm and ammunition.

{¶ 8} On the morning of December 2, 2016, Norman was arraigned on the new charges by a magistrate. Norman was represented in Case No. 2016-CR-556 by different counsel than was representing him on the community control violations.

{¶ 9} In the afternoon of December 2, a hearing on the merits of the community control violation was held. Norman's counsel in that case initially indicated that Norman would admit to all of the violations. The trial court then discussed with Norman certain

rights he was waiving by making the admissions. As part of the hearing, the trial court informed Norman that he faced 30 months in prison if his community control were revoked. The court also asked Norman if he had spoken with his attorney in Case No. 2016-CR-556 regarding his admissions. After the trial court informed Norman that his admission to the first violation would be an admission to the charges in the new indictment, Norman decided that he wanted to admit to the second and third violations, but not the first.

{¶ 10} After a recess, the merits hearing reconvened with Norman's counsel in Case No. 2016-CR-556 present. Counsel indicated that he would represent Norman in both cases, and he asked the court to reschedule the proceedings. The trial court granted the request.

{¶ 11} The parties subsequently reached a plea agreement, which stated:

Admit probation violation in Clark County Common Pleas Case No. 14-CR-

0312. Plead guilty to count three, Having Weapons While Under Disability.

The State of Ohio would dismiss the remaining counts. Agree to forfeiture

of Item A: Black Springfield Armory with live round and ammunition

(Property Receipt 2541, Item 20). Pre-sentence investigation.

{¶ 12} The trial court held a joint plea and admissions hearing on March 16, 2017. The trial court began the hearing by reading the terms of the written plea agreement, and the parties agreed with those terms. The court asked the prosecutor to recite the facts underlying the 2016 case, which the prosecutor did. The court then addressed the 2014 and 2016 cases separately, beginning with Norman's admissions to the alleged community control violations. During this colloquy, the trial court asked Norman, "Do you

understand that if I find you in violation of your community control, I can terminate the community control and sentence you to two years in prison." Norman responded, "Yes, Your Honor." After Norman entered an admission to the community control violations, the trial court took Norman's guilty plea for having weapons while under disability. Norman was told, and he acknowledged, that the court could order the sentences for the violations and having weapons while under disability to be served consecutively.

{¶ 13} Norman was sentenced on April 6, 2017, after the court received a presentence investigation report. As stated above, in Case No. 2016-CR-556, the trial court sentenced him to 36 months in prison, imposed a $7,500 fine, and suspended his driver's license for five years. The court also ordered the firearm to be destroyed. In Case No. 2014-CR-312, the court revoked Norman's community control and imposed 30 months in prison. The court ordered that the 30-month sentence be served prior to and consecutive to the 36-month sentence.

{¶ 14} Norman appeals from his conviction in Case No. 2016-CR-556 and from the revocation of his community control in Case No. 2014-CR-312, raising four assignments of error. We will address them in a manner that facilitates our analysis.

**II. Admissions to Community Control Violations in Case No. 2014-CR-312**

{¶ 15} Norman's first and third assignments of error state:

1. Did the trial court err by obtaining Appellant's admission to community control violations after telling Appellant he would [receive] a shorter prison sentence than the prison sentence actually imposed?

3. Was Appellant denied effective assistance of counsel when counsel failed to object to the trial court's erroneous statement as to the maximum

sentence Appellant would receive for admitting to a community control violation?

**{¶ 16}** The right to continue on community control depends upon compliance with the conditions of community control and is a matter within the sound discretion of the trial court. *State v. Lewis*, 2d Dist. Montgomery No. 23505, 2010-Ohio-3652, ¶ 11. "[A] revocation of community control punishes the failure to comply with the terms and conditions of community control, not the specific conduct that led to the revocation." *State v. Black*, 2d Dist. Montgomery No. 24005, 2011-Ohio-1273, ¶ 17. Crim.R. 32.3, which governs revocation of community control, provides that the trial court "shall not impose a prison term for violation of the conditions of a community control sanction or revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which action is proposed."

**{¶ 17}** "Community control violation proceedings are not equivalent to criminal prosecutions." *Black* at ¶ 12. Nevertheless, "[a] defendant is entitled to certain due process protections before a court may revoke community control sanctions, although the full panoply of rights due a defendant in a criminal prosecution does not apply to the revocation of community control." *State v. Harmon*, 2d Dist. Champaign No. 2007-CA-35, 2008-Ohio-6039, ¶ 6, citing *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). First, a defendant is entitled to a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his or her community control. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *State v. Blakeman*, 2d Dist. Montgomery No. 18983, 2002-Ohio-2153. Second, due process requires a final hearing to determine whether community

control should be revoked. *Id.*

**{¶ 18}** At the final revocation hearing, the State must (1) provide the defendant with written notice of the alleged violations of community control; (2) disclose the evidence against the defendant; (3) give the defendant an opportunity to be heard in person and to present witnesses and documentary evidence; (4) allow the defendant to confront and cross-examine adverse witnesses; (5) afford the defendant a neutral and detached hearing body; and, (6) provide the defendant with a written statement by the fact finder as to the evidence relied upon and the reasons for revoking community control. *State v. Klosterman*, 2d Dist. Darke Nos. 2015-CA-9 and 2015-CA-10, 2016-Ohio-232, ¶ 15; *State v. Gilreath*, 2d Dist. Greene No. 2000-CA-1, 2000 WL 896319, * 2 (July 7, 2000).

**{¶ 19}** A defendant may elect to forgo a hearing on the merits of the alleged community control violations and admit to the violations. Where a defendant elects to do so, the trial court is not required to comply with the requirements of Crim.R. 11, which governs pleas. *State v. Cunningham*, 2d Dist. Clark Nos. 2014-CA-99 and 2014-CA-100, 2015-Ohio-2554, ¶ 14. Unlike in felony plea hearings, the trial court is not required to notify a defendant at a community control revocation hearing of the maximum prison sentence that may be imposed. That notification must have been provided at the original sentencing (if no prior revocation hearing had been held) or at the most recent revocation hearing (if multiple revocation hearings had been held). *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110, 821 N.E.2d 995.

**{¶ 20}** Upon revoking a defendant's community control, the trial court may (1) lengthen the term of the community control sanction; (2) impose a more restrictive community control sanction; or (3) impose a prison term on the offender, provided that

the prison term is within the range of prison terms available for the offense for which community control had been imposed and the term does not exceed the prison term specified in the notice provided to the offender at the original sentencing hearing. R.C. 2929.15(B); *see State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, paragraph two of the syllabus.

{¶ 21} Here, the parties' plea agreement in the 2016 case included that Norman would admit to having violated his community control. Although not required to, the trial court proceeded by asking Norman a series of questions akin to a Crim.R. 11 plea hearing. During this exchange, the trial court told Norman that he faced two years in prison, not 30 months in prison as previously stated at his original sentencing and at the December 2016 hearing.

{¶ 22} There was nothing incorrect in the trial court's notification to Norman that the court could "terminate the community control and sentence you to two years in prison." The revocation of community control process is not the same as a plea to a new offense. Unlike a plea hearing where the maximum possible prison term is defined by statute, the maximum possible prison term for a community control violation is the term set by the trial court. As stated above, that term must be within the sentencing range for the offense for which community control had been imposed (possession of cocaine) and must not exceed the prison term specified in the notice provided to the offender at the original sentencing hearing (30 months). We note that, when the court informed Norman at his original sentencing that it could impose 30 months in prison for a community control violation, the court selected a prison term that was less than the maximum term allowed by law for possession of cocaine (36 months). *See* R.C. 2929.14(A)(3)(b).

{¶ 23} However, the trial court was not permitted to inform Norman that he faced two years in prison and then impose a greater amount at sentencing, even if Norman had previously been told that he could be sentenced to 30 months in prison. By informing Norman at the violations hearing that he faced two years in prison, the trial court modified the maximum possible sentence and committed itself to imposing no more than two years for the community control violations. Stated differently, the trial court did not err in accepting Norman's admission to the community control violations after informing Norman that he faced two years in prison, but the trial court erred when it subsequently imposed 30 months at sentencing.

{¶ 24} Because the trial court did not err at the admissions hearing when it notified Norman of the maximum possible sentence for the community control violations, Norman's counsel did not render ineffective assistance by failing to object to the court's representation that Norman faced two years in prison. We agree with Norman that his counsel should have objected to the 30-month sentence imposed at sentencing, given the court's notification at the plea/admissions hearing.

{¶ 25} Norman's first and third assignments of error are overruled to the extent that they challenge the trial court's acceptance of his admissions. However, Norman's sentence on the community control violations must be reversed, and the matter must be remanded to the trial court for the imposition of a sentence not to exceed two years in prison.

### III. Plea to Having Weapons while Under Disability in Case No. 2016-CR-556

{¶ 26} Norman's second assignment of error states:

Did the trial court err by accepting Appellant's plea of guilty after the trial

court incorrectly stated the prison sentence for which Appellant could be sentenced and when that sentence ran consecutively to the sentence imposed for Appellant's new felony conviction?

{¶ 27} Crim.R. 11(C)(2) requires the court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 28} The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g., State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights.

*Clark* at ¶ 31.

{¶ **29**} Furthermore, when non-constitutional rights are at issue, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. Prejudice in this context means that the plea would otherwise not have been entered. *Id.* at ¶ 15.

{¶ **30**} As part of his plea agreement with the State, Norman agreed to admit to violations of his community control and to plead guilty to having weapons while under disability, in exchange for the dismissal of additional charges. Norman's argument is premised on the assumption that an error in one aspect of the plea agreement taints the entire plea. He claims that his guilty plea to having weapons while under disability was tainted by the trial court's "incorrect and misleading information" about his potential sentence for the community control violations. He argues that his plea to having weapons while under disability was not made knowingly, intelligently, and voluntarily, because he understood at the plea hearing that his plea "may lead to a maximum sixty-month sentence, and not the sixty-six month sentence imposed."

{¶ **31**} At the plea/admissions hearing, the trial court informed Norman that the maximum sentence for having weapons while under disability was 36 months in prison, a $10,000 fine, forfeiture of the weapon, and court costs. The trial court also informed Norman that it could order the sentence to be served consecutively to any sentence imposed in Case No. 2014-CR-312 for the community control violations. Norman was fully advised of the maximum penalty that he faced for having weapons while under disability. And, as discussed above, we find no error in the trial court's acceptance of

Norman's admissions to violations of his community control, although the court erred in its subsequent sentencing on those violations.

{¶ 32} Norman's second assignment of error is overruled.

### IV. Maximum Sentence in Case No. 2016-CR-344 and Consecutive Sentencing

{¶ 33} In his fourth assignment of error, Norman states:

Can this Court find by clear and convincing evidence that the record does not support the imposition of the maximum sentence for Appellant's new felony and the consecutive nature of the sentence imposed on the new felony and sentence imposed on Appellant's community control violation?

{¶ 34} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 35} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

**{¶ 36}** R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

**{¶ 37}** R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record. (Norman did not serve in the military.)

**{¶ 38}** After determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed in other cases. Pursuant to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it determines that: (1) consecutive

service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 39} At the sentencing hearing, the trial court heard from the prosecutor, defense counsel, and Norman, and it reviewed the presentence investigation report (PSI). Attached to the PSI were the indictment and bill of particulars, police reports, laboratory reports related to the 2016 drug and firearm charges, a search warrant for Norman's residence, property receipts from the search warrant, a letter on Norman's behalf from Norman's employer, the Ohio Risk Assessment Survey, a copy of the plea agreement in this case, and photographs of Norman's residence showing indicia of drug trafficking.

{¶ 40} The PSI indicated that Norman was, at that time, 31 years old and had seven children. Norman graduated from high school and attended college for approximately two years. Norman had no juvenile record, but had six prior adult criminal cases: (1) unlawful sexual conduct with a minor (March 2006); (2) menacing (February 2009); (3) possession of drugs (February 2010), (4) disorderly conduct (May 2013), (5) driving under suspension (December 2013), and (6) possession of cocaine (September 2014). Norman previously served time in jail, but he had never been sentenced to prison. Norman reported using alcohol (occasional), cocaine (daily), ecstasy (once), and marijuana (a couple days per week).

{¶ 41} Prior to imposing sentence, the court stated:

In reviewing these cases, there, obviously, is a singular pattern here. In the 14-CR- case the Defendant was originally found guilty [of] possession of cocaine as a felony of the third degree. That was a significant amount of cocaine. He was placed on community control.

In the present 16-CR- case the Defendant again, appears to be trafficking in cocaine. In this particular case the drug charges are being dismissed upon the plea to the firearm violation. So now we have a situation where there's been a while on community control, commits another felony offense.

In both cases, read literally under R.C. 2929.12(C), did the Defendant cause or expect to cause physical harm to persons or property by the violation[?] Possession of cocaine doesn't necessarily indicate an attempt to cause physical harm to persons or property. Possession of a

firearm, does the possession itself cause or attempt to cause physical harm to persons or property? I'm not sure why else someone would have a firearm except in anticipation of having to cause physical harm to somebody – and it's one thing to say, well, it was for self-defense. It's another thing to say it's for self-defense because I chose to be involved in activities which are well known for violence, including violence with firearms.

The Defendant has a history of criminal convictions. He has not responded favorably to sanctions previously imposed for those convictions, and I don't know that I can see any genuine remorse here other than the remorse that he's now looking at a prison term.

He wants to be a role model; he wants to be a father; he wants to help with kids, but he has drugs and firearms in his home where there are children. As previously found, there is no prior adjudication of delinquency. There is no military service record to consider, and the Defendant did score low on the Ohio Risk Assessment Survey. If that is, in fact, supposed to be a determination or at least a guideline as to whether or not somebody will re-offend and what the chances of re-offending may be, I question the significance of that score. R.C. 2929.13 is not applicable.

* * *

I should make note that I did understand the Defendant was currently employed. In both cases the Defendant was unemployed at the time of the offense but became employed prior to disposition. So he's apparently capable of getting employment.

{¶ 42} The record reflects that the trial court obtained a thorough PSI, that it considered the statutory criteria set forth in R.C. 2929.11 and R.C. 2929.12, and that it was transparent and explained its rationale for imposing a 36-month sentence, which was within the sentencing range. Norman's 36-month sentence for having weapons while under disability was not contrary to law.

{¶ 43} In ordering Norman's sentence for the community control violations to be served prior to and consecutively to the sentence for having weapons while under disability, the trial court found that (1) consecutive service was necessary to protect the public from future crime and to punish Norman, (2) consecutive sentences were not disproportionate to the seriousness of Norman's conduct and to the danger he poses to the public, and (3) Norman was on community control in Case No. 2014-CR-312 when he committed the felony in Case No. 2016-CR-556. With the record before us, the trial court's findings are not clearly and convincingly unsupported by the record.

{¶ 44} Norman's fourth assignment of error is overruled.

### V. Conclusion

{¶ 45} The trial court's judgment in Case No. 2016-CR-556 will be affirmed.

{¶ 46} The trial court's judgment in Case No. 2014-CR-312 will be reversed in part, and the matter will be remanded to the trial court for imposition of a new sentence not to exceed two years in prison.

. . . . . . . . . . . . .

DONOVAN, J. concurs.

HALL, J., concurring in part and dissenting in part.

{¶ 47} I agree that Norman's plea to having weapons under disability in the new

case, No. 2016-CR-556, was knowingly, intelligently and voluntarily entered despite the fact that, at the same proceeding, he entered an admission to a community-control sanction violation in case No. 2014-CR-312 after being mistakenly informed that on the probation case he could be sentenced to "two years in prison." On this record, the plea on the new case and the admission on the revocation case were separate and distinct, unaffected by any aggregate sentencing agreement. Therefore, there is no reversible error with respect to the new case plea and sentence.

{¶ 48} I also agree that the requirements of Crim.R. 11 do not apply to an admission to a community-control violation. In such a proceeding, "the trial court is not required to notify a defendant at a community control revocation hearing of the maximum prison sentence that may be imposed." (*Supra*, ¶ 19). Consistently, then, before accepting a revocation admission, the trial court also would not be required to notify the defendant whether the potential sentence could be concurrent or consecutive to some other sentence. The discrete question here though is whether it is reversible error, as a denial of due process, to have accepted a revocation admission when the trial court imposes a potential thirty-month sentence, the defendant acknowledges there is a potential thirty-month sentence, but the trial court later mistakenly informs the defendant that the potential sentence for the revocation is two years in prison rather than the applicable maximum of thirty months, and the court then sentences the defendant to thirty months.

{¶ 49} In my opinion, the trial court's notification at the March 16, 2017 proceeding that the potential revocation case sentence was "two years" was no more than a misstatement. In this revocation case, the September 8, 2014 plea colloquy included the potential maximum term of "a 36-month prison sentence" (September 8, 2014 Plea Tr. at

7). At the sentencing, the court orally imposed community control and stated that if the defendant violates the terms "the Defendant will be sentenced to a prison term of 30 months," less than the maximum. (September 30, 2014 Disposition Tr. at 9). The October 3, 2014 judgment entry of conviction states that "[v]iolation of any part of this sentence shall lead to * * *a prison term of thirty (30) months." (Doc. #16). At the December, 2, 2016 first attempt for the defendant to enter an admission to two of the three alleged community-control violations, the trial court asked, "Do you understand that if I find you in violation of community control, I could terminate the program [community control] and sentence you today to 30 months in prison." The defendant responded, "Yes." (December, 2, 2016 Community Control Violation Tr. at 8). That proceeding was later continued without disposition. At the sentencing on the revocation, the court orally stated that "it's the order of the Court the defendant be sentenced to a term of 30 months" in prison. (April 6, 2017 Disposition Tr. at 11). (This is a sentence to which the defendant did not object.) Finally, in the April 11, 2017 judgment entry of conviction and warrant for removal (Doc. # 25), the court ordered that "the defendant will serve a prison term of thirty (30) months."

{¶ 50} I emphasize that there was no agreement entered into with respect to an aggregate sentence in exchange for the plea to the new case and the admission in the revocation case. Had there been an agreed reduction in the potential revocation sentence in exchange for Norman's admission, that agreement could be enforced and the result could be different. But after previously having been informed four times of the potential revocation sentence, it is likely that the defendant knew that the trial court misstated the potential revocation sentence was only 24 months during the March 16, 2017 hearing.

Furthermore, in the absence of an objection at sentencing, one could reasonably conclude that there is no reversible error.

{¶ 51} Nevertheless , if on appeal this court were to give the defendant the benefit of the doubt and conclude that his revocation admission was predicated on misinformation of a potential twenty-four month sentence, then the admission was not knowingly, intelligently and voluntarily entered and should be vacated. I can find no basis for truncating the potential sentence to twenty-four months based on the apparent misstatement in one out of the eight times that the trial court dealt with the sentence term. In my opinion, the remedy the majority decision imposes of limiting the revocation sentence to twenty-four months, rather than vacating the admission and remanding the case for further proceedings, is without precedent and from that I dissent.


Copies mailed to:

Andrew P. Pickering
Michael T. Columbus
Hon. Richard J. O'Neill