OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Bobbi Jo Harmon, filed November 26, 2007. On August 25, 2005, Harmon was indicted on two counts of receiving stolen property, in violation of R.C. 2913.51(A)(C), felonies of the fourth degree; one count of grand theft of a motor vehicle, in violation of R.C. 2913.02(A)(2)(B)(5), a felony of the *Page 2 
fourth degree; and one count of theft, in violation of R.C. 2913.02(A)(1)(B)(2), a misdemeanor of the first degree. Harmon pled not guilty, but later withdrew her pleas and pled guilty to one count of receiving stolen property and one count of grand theft of a motor vehicle. The remaining counts were dismissed. On June 14, 2006, the trial court sentenced Harmon to three years of standard community control sanctions.
 {¶ 2} On October 15, 2007, Harmon's probation officer filed a Notice of Supervision Violation stating that Harmon, on or about August 30, 2007, tested positive for marijuana. On October 10, 2007, Harmon appeared for sentencing without an attorney, and the hearing was continued. On October 29, 2007, Harmon's community control sanctions were revoked, and she was sentenced to two 18 month sentences to be served concurrently.
 {¶ 3} Harmon asserts four assignments of error. We will begin our analysis with Harmon's fourth assignment of error, which is dispositive of her appeal. Harmon's fourth assignment of error is as follows:
 {¶ 4} "DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED BY THE TRIAL COURT DURING HER COMMUNITY CONTROL VIOLATION HEARING."
 {¶ 5} Harmon argues that the trial court erred in revoking her community control sanctions without addressing her directly and without determining that she understood the proceedings, in violation of her rights to the minimum due process protections set forth in Gagnon v.Scarpelli (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. The State responds that Harmon was afforded the process required. The State also asserts that resolution of this assignment of error "is ultimately dependent upon evidence dehors the record, and therefore, is not cognizable on direct appeal." Harmon replies that she is "not asking the Court to consider *Page 3 
evidence that may have been presented. Rather, Harmon asserts that the lack of any dialogue between the Court and Harmon during the adjudication stage of the violation hearing evidences that Harmon's due process rights were violated." According to Harmon, the trial court was required to ensure that she understood that by proceeding directly to disposition she was waiving the protections afforded to her in a community control revocation hearing and was subject to an 18 month sentence.
 {¶ 6} A defendant is entitled to certain due process protections before a court may revoke community control sanctions, although the full panoply of rights due a defendant in a criminal prosecution does not apply to the revocation of community control. Morrissey v. Brewer
(1972), 408 U.S. 471, 480, 93 S.Ct. 2593. In State v. Blakeman, Montgomery App. No. 18983, 2002-Ohio-2153, we determined, "The Fourteenth Amendment to the Constitution of the United States provides that no state shall deprive any person of liberty without due process of law. A person whose liberty is conditioned on compliance with community control sanctions is deprived of even that liberty interest by a finding that he violated those sanctions, which then results in his incarceration. The issue then, and the issue which [Harmon's] assignment of error raises is, whether the deprivation to which [Harmon] has been subjected comported with the standards which due process of law imposes.
 {¶ 7} "Community control is similar to probation in its detrimental effect on a defendant's liberty interest. Revocation of probation has been held to implicate two due process requirements. The first of those is a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his probation.Gagnon[.] * * * The second requirement that the due process right imposes is a final hearing to determine whether *Page 4 
probation should be revoked. Id. At the final revocation hearing, the State must (1) provide the probationer with written notice of the alleged violations of probation; (2) disclose the evidence against him; (3) give the probationer an opportunity to be heard in person and to present witnesses and documentary evidence; (4) allow him to confront and cross-examine adverse witnesses; (5) afford him a neutral and detached hearing body; and (6) provide the probationer with a written statement by the fact finder as to the evidence relied upon and the reasons for revoking probation.' Gagnon.
 {¶ 8} * * *
 {¶ 9} "This court summarized the requirements for a probation revocation proceeding in State v. Bialek (Feb. 17, 1992), Montgomery App. No. 12323, unreported, at p. 2: `What is needed is an informal hearing structure to assure that the finding of a violation will be based upon verified facts and that the exercise of discretion will be informed by an accurate knowledge of the probationer's behavior. This may be a narrow inquiry. The process should be flexible enough, upon a showing of good cause, to consider evidence, including letters, affidavits, and other material that would not be admissible in an adversary criminal trial. (Citation omitted). Furthermore, the state need only provide substantial evidence that appellant violated his probation in order to satisfy its burden of proof
 {¶ 10} "* * *
 {¶ 11} "Ordinarily, failure to object to due process violations during a probation revocation waives any error. (Internal citation omitted). However, a party who fails to object to a due process violation at the hearing may still prevail on appeal if the procedural error rises to the level of plain error. The plain error doctrine permits an appellate court to reverse the *Page 5 
judgment of the trial court if `the error * * * [is] of such nature that the outcome of the hearing would have been otherwise but for the error.' (Internal citation omitted)."
 {¶ 12} The following exchange occurred at Harmon's hearing:
 {¶ 13} "THE COURT: * * * Have you had an opportunity to see the supervision violation allegations, Counsel?
 {¶ 14} "MR. STRAPP: Yes, Your Honor.
 {¶ 15} "THE COURT: Thank you. Having seen the same did you wish to contest the existence of probable cause to hold a violation hearing?
 {¶ 16} "MR. STRAPP: No, Your Honor.
 {¶ 17} "THE COURT: Thank you. The Court finds that probable cause exists. Did you wish to contest the merits of the allegations?
 {¶ 18} "MR. STRAPP: No, Your Honor.
 {¶ 19} "THE COURT: Thank you. The Court finds that the merits exist. Do you wish to proceed to disposition today?
 {¶ 20} "MR. STRAPP: Yes, Your Honor."
 {¶ 21} The State then recommended that Harmon "be placed back on supervision or continued supervision but successfully complete a residential drug program." Counsel for Harmon argued that she was currently employed and should be allowed to continue on her community control "with possibly more counseling."[1] Only then did the court speak to Harmon *Page 6 
directly, asking her if she had something to say. Harmon made a brief statement. After discussing Harmon's two previous positive test results, her substance abuse treatment and counseling history, including her August 6, 2006 completion of the Great Seal Counseling Program, and her prior misdemeanor drug offense convictions, the court imposed sentence.
 {¶ 22} The record reveals that the trial court accepted counsel's representations regarding probable cause and the merits of the matter and proceeded to disposition without addressing Harmon directly and determining that she understood the two-part proceeding and the rights she was waiving. "A waiver is an intentional relinquishment of aknown right. (Internal citation omitted) It is `applicable to all personal rights and privileges, whether contractual, statutory, or constitutional.'" State v. Sarkozy, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 18
(emphasis added). The record fails to demonstrate that Harmon knew that she had the right to be heard in person during adjudication, to dispute probable cause and the merits of the violation, to present evidence and mitigation and to confront any adverse witnesses who may have testified. In a process that was far from flexible, the trial court rolled through the adjudicatory phase of the hearing to disposition without addressing Harmon directly and determining if she was intentionally waiving known rights. In other words, the deprivation of Harmon's liberty interest did not comport with the standards which due process of law imposes. Blakeman. We agree with Harmon that she was deprived of her right to due process, and we *Page 7 
find that this procedural error rises to the level of plain error. Harmon's fourth assignment of error is sustained.
 {¶ 23} Harmon's remaining assignments of error are rendered moot by our resolution of her fourth assignment of error. They are as follows:
 {¶ 24} "THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION WHEN IT REVOKED DEFENDANT'S COMMUNITY CONTROL AND SENTENCED DEFENDANT TO EIGHTEEN MONTHS IN PRISON IN LIGHT OF THE VIOLATION COMMITTED AND THE MITIGATING CIRCUMSTANCES PRESENTED." And,
 {¶ 25} "THE TRIAL COURT ERRED BY FAILING TO ISSUE A SENTENCE IN ACCORDANCE WITH THE LAWS AND SENTENCING PRINCIPLES SET FORTH IN CHAPTER 2929 OF THE OHIO REVISED CODE." And,
 {¶ 26} "THE DEFENDANT WAS UNFAIRLY PREJUDICED BY THE INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HER RIGHTS."
 {¶ 27} The judgment of the trial court is reversed, Harmon's sentence is vacated, and she is ordered discharged.
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Scott D. Schockling Christian A. McGill Hon. Roger B. Wilson
[1] If community control sanctions are violated, the court may impose a longer term under the same sanction, a more restrictive sanction or a prison term that does not exceed the term the offender was notified of at the original sentencing. R.C. 2929.19(B)(5). "When a felony defendant who has a recognized drug problem has been sentenced to community control sanctions and has met all of the conditions but violated the conditions of the sanction solely because of possession or use of a controlled substance, the punishment must be determined in conformity with the overriding purposes of punishment contained in R.C. 2929.11. The legislature has indicted a disposition against imprisonment and in favor of drug treatment for the offender whose only transgression is a positive drug test and who has satisfactorily fulfilled all other conditions which were part of the community control sanctions. The preference for treatment is premised upon an understanding that relapse is part of the recovery process." Baldwin's OH. Prac. Crim. L. § 119:9 (2008). *Page 1