[Cite as *State v. Torres*, 2022-Ohio-889.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

CESAR JAVIER CASTRO TORRES,

        Defendant-Appellant.

CASE NO. 2020-P-0094

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2019 CR 00825

---

# O P I N I O N

Decided: March 21, 2022
Judgment: Reversed and remanded

---

*Victor V. Vigluicci*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Shubhra N. Agarwal*, 3732 Fishcreek Road, #288, Stow, OH 44224 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Cesar Javier Castro Torres ("Mr. Torres"), appeals from the judgment of the Portage County Court of Common Pleas revoking his community control and sentencing him to consecutive prison terms of 24 months and 18 months.

{¶2} Mr. Torres asserts four assignments of error, contending that (1) the trial court violated his due process rights during the revocation hearing; (2) his trial counsel provided ineffective assistance; (3) the trial court's sentencing entry contains a discrepancy; and (4) the trial court improperly imposed consecutive sentences.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) The trial court committed plain error by failing to provide Mr. Torres any opportunity to consult with his appointed defense counsel prior to revoking his community control and sentencing him to consecutive prison terms.

{¶5} (2) Our disposition of Mr. Torres' first assignment of error renders his remaining assignments of error moot.

{¶6} Thus, we reverse the trial court's judgment, and we remand this matter for the trial court to conduct a community control revocation hearing in compliance with all legal requirements.

## Substantive and Procedural History

{¶7} In September 2019, the Ohio State Highway Patrol observed Mr. Torres speeding in Portage County. He failed to stop, and a pursuit ensued, at which time Mr. Torres drove up to 119 miles per hour and traveled through a red light. Mr. Torres eventually came to a stop in Trumbull County and was taken into custody. He was driving a stolen vehicle belonging to a Pennsylvania resident.

{¶8} The Portage County Grand Jury indicted Mr. Torres for failure to comply with order or signal of police officer, a felony of the third degree, in violation of R.C. 2921.331 (count one), and receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51 (count two). Count one included an allegation that Mr. Torres' operation of the motor vehicle "caused a substantial risk of serious physical harm to persons or property," which elevated the offense from a misdemeanor of the first degree to a felony of the third degree. *See* R.C. 2921.331(C)(3) and (C)(5)(a)(ii).

{¶9} Mr. Torres initially pleaded not guilty to the charges. In December 2019, Mr. Torres entered written and oral pleas of guilty to both counts. Following a plea

2

colloquy, the trial court accepted Mr. Torres' guilty pleas, found him guilty, and ordered a presentence investigation ("PSI") and a NEOCAP evaluation.

{¶10} In January 2020, the trial court sentenced Mr. Torres to 180 days in jail with credit for 147 days; 12 months of intensive supervision and 36 months of general supervision, with certain conditions; a fine; and court costs. The trial court permitted Mr. Torres to transfer his supervision to West Virginia, i.e., his place of residence, if accepted. The trial court notified Mr. Torres that if he violated the terms of his community control, it could impose more restrictive community control sanctions or prison terms of 36 months and 18 months to run consecutively.

{¶11} In March 2020, the trial court filed a judgment entry finding that "via Adult Probation Department, [Mr. Torres] has absconded from Interstate Compact from West Virginia" and issued a nationwide warrant for Mr. Torres' arrest. On November 13, Mr. Torres was served with the warrant, arrested, and incarcerated in the Portage County Jail. On November 17, a hearing notice was filed scheduling the matter for "sentencing" on November 30.

{¶12} Mr. Torres appeared at the scheduled hearing via video Zoom. His appointed defense counsel and the prosecutor appeared in person, and a probation officer appeared by phone.

{¶13} The trial court began by stating that it was recalling the warrant. It noted Mr. Torres' prior guilty pleas and listed the potential penalties associated with each offense. It then stated, "Before I sentence the Defendant, I'd like to hear from Defense Counsel."

{¶14} Defense counsel informed the trial court that he was not aware "these clients weren't being brought over from the jail" and that he did not have the opportunity

3

to speak to Mr. Torres. However, it was his understanding that Mr. Torres' probation had been transferred to West Virginia. Mr. Torres was "not in compliance with probation there" and had been in custody in Portage County since November 13. Defense counsel requested that the trial court reinstate Mr. Torres' community control sanctions and permit him to complete his supervision in Ohio if he had a suitable residence in the county.

{¶15} The trial court responded, "Again, this is not a sentencing hearing. This is, I guess, motion to revoke or modify." The trial court noted that it had already sentenced Mr. Torres but that "somehow somebody set it for a sentencing hearing today." The trial court noted that Mr. Torres was arrested on a nationwide warrant.

{¶16} The prosecutor stated that the probation department did not provide him with a copy of its motion to revoke or its recommendation; rather, he only received the PSI. The trial court replied, "That's what I got, too. So I don't know why it was set the way it was set. It's wrong." The prosecutor further stated that the matter involved "a courtesy supervision in West Virginia" and that Mr. Torres had not complied there.

{¶17} The trial court reiterated that it was recalling the warrant and asked the prosecutor if he wanted to reset the matter. The prosecutor replied, "Whatever is convenient for the Court, Your Honor."

{¶18} The probation officer then addressed the trial court and stated that Mr. Torres had "actually gotten it prior to making it to West Virginia. He never reported to West Virginia and was considered absconded; therefore, a nationwide was issued for his arrest."

{¶19} The trial court stated it that would proceed on the "motion to revoke" and asked if defense counsel had anything to say on Mr. Torres' behalf. Defense counsel asked the court to consider the results of Mr. Torres' NEOCAP evaluation and stated that

4

Mr. Torres was "amenable to community control despite his recent conduct." Defense counsel again requested that the trial court continue Mr. Torres' community control sanctions.

{¶20} The prosecutor argued that Mr. Torres was no longer amenable to community control sanctions because he was not compliant and had never reported to probation.

{¶21} The trial court requested to hear from Mr. Torres. Mr. Torres stated that he was incarcerated in Pennsylvania and had been incarcerated for 15 months. He was unable to get his interstate compact transferred to West Virginia. He still had the paperwork given to him in January 2020 and requested an opportunity to "get out there and get that taken care of." In response to the trial court's inquiry, Mr. Torres stated that he was incarcerated in Pennsylvania "for a vehicle." He was on probation and was being permitted to transfer "everything" to West Virginia.

{¶22} Following Mr. Torres' remarks, the trial court found that he was no longer amenable to community control sanctions and that a prison term was warranted. The trial court sentenced Mr. Torres to prison terms of 24 months on count one (failure to comply) and 12 months on count two (receiving stolen property) with credit for time served in the Portage County Jail. The trial court determined that the prison terms were mandated to run consecutively because of the failure to comply offense in count one.

{¶23} Following the trial court's explanation of post-release control, the trial court asked Mr. Torres if he understood. Mr. Torres stated, "I – I don't. I don't – I don't understand what's – what's happening, Your Honor." The trial court replied, "You're going to prison." The trial court then specified Mr. Torres' jail-time credit and concluded the hearing.

5

{¶24} The trial court subsequently filed a judgment entry memorializing the November 2020 hearing and Mr. Torres' sentences. The sentencing entry lists Mr. Torres' prison term on count two (receiving stolen property) as 18 months rather than 12 months. The sentencing entry also contains two consecutive sentence findings pursuant to R.C. 2929.14(C)(4).

{¶25} Mr. Torres appealed and asserted two assignments of error:

{¶26} "[1.] The trial court committed reversible error and plain error by proceeding to sentence Mr. Torres on a community control violation without providing notice and first holding a community control violation/revocation hearing thus violating Mr. Torres' right to due process.

{¶27} "[2.] Mr. Torres was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to request a continuance or object to the trial court proceeding to sentence Mr. Torres on a community control violation without first providing notice and holding a community control violation/revocation hearing."

{¶28} In response to this court's sua sponte order for supplemental briefing, Mr. Torres asserted two additional assignments of error:

{¶29} "[3.] The discrepancy in Mr. Torres' prison sentence as reflected in the sentencing transcript and the corresponding judgment entry constitutes prejudicial error.

{¶30} "[4.] The trial court improperly imposed consecutive prison sentences for Mr. Torres' violation of community control."

**Due Process**

{¶31} In his first assignment of error, Mr. Torres contends that the trial court violated his due process rights in several respects prior to revoking his community control and sentencing him to prison.

6

Case No. 2020-P-0094

### Standard of Review

{¶32} Since Mr. Torres did not raise the alleged due process violations in the trial court, he has forfeited all but plain error. *State v. Solomon*, 11th Dist. Portage No. 2017-P-0078, 2019-Ohio-1841, ¶ 10.

{¶33} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To find plain error, we must conclude (1) there was an error, i.e., a deviation from a legal rule, (2) the error was plain, i.e., an obvious defect in the trial proceedings, and (3) the error affected substantial rights, i.e., the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). In other words, the defendant must demonstrate a reasonable probability that the error resulted in prejudice, which is the same deferential standard for reviewing ineffective assistance of counsel claims. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

{¶34} Plain error must be noticed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

### Due Process Requirements

{¶35} This court has recognized that a community control revocation hearing is not a criminal trial. *State v. Mayle*, 2017-Ohio-8942, 101 N.E.3d 490, ¶ 14 (11th Dist.). Therefore, a defendant faced with revocation of community control is not afforded the full panoply of rights given to a defendant in a criminal prosecution. *Id.*

{¶36} However, a defendant is entitled to due process at a revocation hearing. *See State v. Thomas*, 2018-Ohio-1024, 109 N.E.3d 12, ¶ 8 (11th Dist.); *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). These due process

7

rights include (1) written notice of the claimed violations of community control; (2) disclosure of evidence against the defendant; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the fact finder as to the evidence relied upon and the reasons for revoking community control. *Thomas* at ¶ 8; *see Gagnon* at 786.

{¶37} Revocation of community control is also governed by Crim.R. 32.3, which provides, in relevant part, as follows:

{¶38} "(A) Hearing. The court shall not impose a prison term for violation of the conditions of a community control sanction or revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which action is proposed. The defendant may be admitted for bail pending hearing.

{¶39} "(B) Counsel. The defendant shall have the right to be represented by retained counsel and shall be so advised. Where a defendant convicted of a serious offense is unable to obtain counsel, counsel shall be assigned to represent the defendant, unless the defendant after being fully advised of his or her right to assigned counsel, knowingly, intelligently, and voluntarily waives the right to counsel. Where a defendant convicted of a petty offense is unable to obtain counsel, the court may assign counsel to represent the defendant."

*Law and Analysis*

{¶40} The record in this case demonstrates numerous irregularities. Most crucially, however, the trial court did not provide Mr. Torres with any opportunity to consult with his appointed counsel prior to revoking his community control and sentencing him to consecutive prison terms.

8

{¶41} The Supreme Court of the United States has explained that a court's duty to appoint counsel "is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *Powell v. Alabama*, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Otherwise, "the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel." *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940).

{¶42} In the context of probation revocation/sentencing hearings, the court has found that "the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent." *Mempa v. Rhay*, 389 U.S. 128, 135, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

{¶43} Although Mr. Torres' appointed counsel appeared at the November 2020 hearing, he expressly informed the trial court that he did not have an opportunity to speak with Mr. Torres. There is no indication in the record that defense counsel was ever given such an opportunity. The transcript indicates that Mr. Torres appeared via video Zoom, while defense counsel appeared in person, and there were no recesses.

{¶44} During the hearing, defense counsel essentially conceded that Mr. Torres violated his community control and requested leniency based on Mr. Torres' prior NEOCAP evaluation. By contrast, Mr. Torres contended, on his own behalf, that his prior incarceration in Pennsylvania made him "unable" to transfer his community control to West Virginia.

9

{¶45} The state argues that there is no reasonable probability of a different outcome in this case, citing the Seventh District's decision in *State v. McClellan*, 7th Dist. Mahoning No. 10 MA 181, 2011-Ohio-4557. In that case, the court stated that "when a probationer fails to report because he or she is in jail, probation can be legally revoked." *Id.* at ¶ 23.

{¶46} In *McClellan*, however, defense counsel was familiar with the facts underlying the defendant's prior incarceration, and those facts were presented to the trial court for consideration. *See id.* at ¶ 21-22. Here, the transcript suggests that defense counsel was unaware of the facts underlying Mr. Torres' incarceration in Pennsylvania. In addition, such facts were not fully developed at the hearing, nor are they reflected in the record before us.

{¶47} Further, the Supreme Court has recognized that "'the right to be represented by counsel is by far the most pervasive * * * [o]f all the rights that an accused person has, * * * for it affects his ability to assert any other rights he may have.'" *United States v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), quoting Schaefer, *Federalism and State Criminal Procedure*, 70 Harv.L.Rev. 1, 8 (1956). Thus, the Supreme Court has determined that a showing of prejudice is not required in rare circumstances, including "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659, fn. 25; *see, e.g., Hunt v. Mitchell*, 261 F.3d 575, 584 (6th Cir.2001) (finding a presumption of prejudice where "there [was] no indication that [appellant] consulted with his lawyer even once before the start of voir dire").

{¶48} Since Mr. Torres was not given any opportunity to consult with his defense counsel prior to revocation/sentencing, he was necessarily prevented from having

10

counsel's assistance in investigating the circumstances of his prior incarceration, obtaining relevant evidence, and properly presenting a defense or mitigating circumstances. When this fact is considered along with the confusion of all participants about the nature of the proceeding and Mr. Torres' statement to the court confirming that confusion, we have no other alternative but to find error.

{¶49} Accordingly, we conclude that (1) the trial court violated Mr. Torres' right to representation by counsel pursuant to Crim.R. 32.3; (2) the trial court's error was an obvious defect in the proceedings, and (3) prejudice to Mr. Torres is presumed.

{¶50} Mr. Torres' first assignment of error has merit. The trial court's judgment is reversed, and this matter is remanded for the trial court to conduct a community control revocation hearing in compliance with all legal requirements.

{¶51} Our disposition of Mr. Torres' first assignment of error renders his remaining assignments of error moot.

{¶52} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this opinion.

THOMAS R. WRIGHT, P.J.,

JOHN J. EKLUND, J.,

concur.

11

Case No. 2020-P-0094