[Cite as *State v. Mosier*, 2025-Ohio-4417.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

SCOTT M. MOSIER,

        Defendant-Appellant.

CASE NO. 2024-P-0080

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2023 CR 01103

## OPINION AND JUDGMENT ENTRY

Decided: September 22, 2025
Judgment: Reversed and remanded

*Connie J. Lewandowski*, Portage County Prosecutor, and *Kristina K. Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Eric R. Fink*, 11 River Street, Kent, OH 44240 (For Defendant-Appellant).

ROBERT J. PATTON, P.J.

{¶1} Defendant-appellant, Scott M. Mosier ("Mosier"), appeals from the judgment of the Portage County Court of Common Pleas revoking his community control and imposing a prison term of five to seven and a half years in prison for his conviction of burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(1) and a jail term of ninety days for obstructing official business, a misdemeanor of the second degree, in violation of R.C. 2921.31.

{¶2} On appeal, Mosier asserts that the trial court violated his due process rights when it revoked his community control without conducting a separate probable cause

hearing and evidentiary merit hearing. Neither Mosier nor his counsel objected at the hearing; and therefore, he has waived all but plain error on review.

{¶3} Upon review, we conclude that the trial court did not comply with the due process requirements when it revoked Mosier's community control and sentenced him to prison. While Mosier was provided notice of the violation and appeared at the hearing on the violation with counsel, Mosier did not admit to the violation, did not waive his rights and was not given a meaningful opportunity to be heard. At the revocation hearing, the trial court read a statement regarding Mosier's expulsion from Community Assessment & Treatment Services ("CATS") due to noncompliance. After several interruptions by the trial court, Mosier admitted that he was "no longer at CATS."

{¶4} In the case sub judice, the trial court conducted a cursory proceeding and preemptively concluded, during introductory remarks, that Mosier had violated the terms of his community control. We find that the trial court failed to comply with the due process requirements when it revoked Mosier's community control, and that such action constituted plain error.

{¶5} Accordingly, as Mosier's sole assignment of error is meritorious, the judgment of the Portage County Court of Common Pleas is reversed and this case is remanded to the trial court for further proceedings consistent with this court's opinion.

## Substantive and Procedural Facts

{¶6} On October 12, 2023, the Portage County grand jury returned a two-count indictment charging Mosier with burglary, a second-degree felony, in violation of 2911.12(A)(1) ("Count 1"), and obstructing official business, a second-degree misdemeanor in violation of R.C. 2921.31 ("Count 2").

{¶7}   On October 16, 2023, Mosier entered a plea of not guilty to the charges at arraignment. Bond was set at $300,000 cash or surety with the condition that Mosier have no contact with the victims. Defense counsel filed a motion to determine Mosier's competency to stand trial two days later, on October 18, 2023. The trial court granted the motion on October 23, 2023.

{¶8}   A competency hearing was held on January 17, 2024. The parties stipulated to a report from December 11, 2023, which opined that Mosier was not competent to stand trial but there was a substantial probability that his competency could be restored with a course of treatment. The trial court ordered Mosier to complete inpatient treatment to restore his competency.

{¶9}   On April 16, 2024, the parties reconvened for a second competency hearing. The parties stipulated to a competency restoration report which concluded, with a reasonable medical certainty, that Mosier was competent to stand trial. The trial court concurred with the second competency report.

{¶10}  Bond was modified on July 8, 2024, and July 9, 2024, due to a warrant and detainer from Trumbull County.

{¶11}  On August 20, 2024, Mosier appeared before the court, with counsel, and entered a no contest plea to the offenses as charged in the indictment.[1] The State provided the following facts derived from the statement prepared by the investigating officer:

{¶12}  On Saturday, October 7, 2023, at approximately 2:21 in the morning, officers were dispatched to a disturbance which turned into a burglary located at 9142

---

1. The signed guilty plea does not mention the misdemeanor charge and does not indicate that Mosier entered a plea of no contest. In other words, the signed written plea document is not an accurate reflection of the plea hearing.

Case No. 2024-P-0080

Hickory Circle, Windham, Ohio 44288. Officers were advised by dispatch that an individual was walking around with a flashlight and screaming. While responding to the location, dispatch advised officers to increase their response time "due to the subject possibly being in the process of injuring a dog."

{¶13} When the officers arrived, loud noises were coming from behind the residence. Officers discovered a male who was shirtless, covered in blood, and holding something in his hands that was black in color, in the fenced-in backyard. Officers ordered the individual, later identified as Mosier, to drop what was in his hands, raise his hands into the air and step towards them. Mosier threw the item he was holding to the ground and placed his hands behind his head. However, Mosier was "screaming aggressively" and moving erratically. Mosier failed to obey the officer's commands. Mosier then jumped over the fence and began approaching officers.

{¶14} Officers gave a series of verbal commands, including to step back, turn around, and place his hands behind his back. Mosier did not comply. One of the officers on scene advised Mosier that he would be tased if he continued to approach them and failed to follow their commands. He continued to disobey until an officer asked him to pray with him. After Mosier complied with law enforcement officials, the officers observed that Mosier was "bleeding heavily from his hand." Mosier was subsequently evaluated by Emergency Medical Services ("EMS").

{¶15} Upon investigating the incident, officers discovered Mosier entered into the backyard of the residence, and ripped down two security cameras and a porch light. Mosier has also broken three of the home's windows. An occupant of the residence informed officers that Mosier entered the attached sunroom. At the time of the break-in,

the family dog was inside the sunroom.[2] Mosier, after entering the sunroom, began shouting at the occupant through a sliding glass door. Mosier threatened to physically harm the occupant. Officers later discovered, that at the time of the incident, six individuals were inside the residence, including multiple "very young juveniles."

{¶16} The trial court found Mosier guilty of both offenses and revoked bond. A presentence investigation ("PSI") was ordered.

{¶17} A sentencing hearing was held on October 18, 2024. The trial court sentenced Mosier to four years of community control consisting of intensive supervision for the first 12 months followed by 36 months of general supervision. As a condition of his community control, the trial court ordered Mosier to complete Community Assessment & Treatment Services ("CATS") successfully. The trial court informed Mosier that upon a violation of his community control sanctions, the trial court would impose an indefinite prison sentence of five years to seven and a half years on Count 1.[3] No fine was imposed. The trial court also ordered restitution in the amount of $2,020.

{¶18} On November 6, 2024, less than three weeks after sentencing, the Adult Probation Department filed a motion with the trial court seeking to revoke or modify Mosier's community control sanctions. The probation department asserted that Mosier was dismissed from CATS for noncompliance and did not successfully complete the program.

{¶19} Two days later, on November 8, 2024, a hearing was held on the probation department's motion to revoke. At the hearing, Mosier admitted that he was "no longer at

---

2. According to the PSI, officers were unable to confirm any injuries to the family dog.
3. The trial court did not discuss or impose a sentence on Count 2, obstructing official business at the October 18, 2024 sentencing hearing and did not indicate what, if any, time Mosier may serve on the misdemeanor upon a violation.

Case No. 2024-P-0080

CATS." The trial court granted the motion to revoke and concluded that Mosier was no longer amenable to community control sanctions. Mosier's community control was terminated, and the trial court imposed a prison term of five to seven and a half years on Count 1. The trial court also converted the restitution previously ordered into a civil judgment.[4]

{¶20} Mosier timely appeals.

## The Appeal

{¶21} On appeal, Mosier raises a single assignment of error for review: "The trial court violated Mr. Mosier's due process rights when it revoked Mr. Mosier's probation without conducting a separate probable cause hearing and evidentiary merit hearing."

{¶22} Crim.R. 32.3(A) provides that a trial "court shall not impose a prison term for violation of the conditions of a community control sanction or revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which action is proposed." It is well established that "'[c]ommunity control violation proceedings are not equivalent to criminal prosecutions.'" *State v. Wright*, 2022-Ohio-2100, ¶ 15 (11th Dist.), quoting *State v. Black*, 2011-Ohio-1273, ¶ 12 (2d Dist.). Because the community control violations are not equivalent to criminal prosecutions, "the full panoply of rights accorded a defendant in a criminal prosecution do not apply to the community-control revocation process." *Id. citing Morrisey v. Brewer*, 408 U.S. 471, 480 (1972)." *See also*, *State v. Reed*, 2023-Ohio-1161, ¶ 8 (2d Dist.), quoting *State v. Harmon*, 2008-Ohio-6039, ¶ 6 (2d Dist.); *In re C.E.S.*, 2014-Ohio-4296, ¶ 18 (11th Dist.). In addition, "the requirements of Crim.R. 11(C)(2) do not apply to a community-control-

---

4. On January 23, 2025, a nunc pro tunc entry on sentence was filed correcting the calculation of jail time credit from 75 days to 349 days.

Case No. 2024-P-0080

violation hearing." *State v. Patton*, 2016-Ohio-4867, ¶ 11 (8th Dist.), quoting *State v. Parsons*, 2009-Ohio-7068, ¶ 11 (4th Dist.).

{¶23} Still, before a court may revoke community-control sanctions, a criminal defendant is entitled to certain due process protections. *Wright* at ¶ 15. *See e.g. In re C.E.S.*, 2014-Ohio-4296, ¶18 (11th Dist.). "First, a defendant is entitled to a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his or her community control. *State v. Sallaz*, 2004-Ohio-3508, ¶ 38 (11th Dist.), citing *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). Second, due process requires a final hearing to determine whether community control should be revoked." *Wright* at ¶ 15.

{¶24} As this court recognized in *State v. Thomas*, 2018-Ohio-1024, ¶ 8 (11th Dist.):

> "A defendant is entitled to due process when his community control is revoked as the result of a violation of a condition imposed on that control." *State v. Cunningham*, 2d Dist. Clark Nos. 2014-CA-99, 2015-Ohio-2554, 2015 WL 3932447, ¶ 11 citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The due process rights to which an alleged violator is entitled in a community control revocation hearing are: (1) written notice of the claimed violations of community control; (2) disclosure of evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the fact finder as to the evidence relied upon and the reasons for revoking community control. *Gagnon, supra,* at 786, 93 S.Ct. 1756, quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

*See also State v. Warfield*, 2022-Ohio-1818, ¶ 57 (11th Dist.); *State v. Hambidge*, 2025-Ohio-1944, ¶ 17-19 (2nd Dist.). Accordingly, this court has clearly set forth the due process rights a defendant is afforded when facing a revocation of community control.

Case No. 2024-P-0080

{¶25} Mosier asserts that his due process rights were violated because the trial court did not conduct a separate probable cause hearing and an evidentiary merit hearing. Neither Mosier nor his defense counsel objected at the hearing. The failure to object to a due process violation during a community control revocation hearing waives all but plain error. *State v. Torres*, 2022-Ohio-889, ¶ 32 (11th Dist.), citing *State v. Solomon*, 2019-Ohio-1841, ¶ 10 (11th Dist.). *See also Reed*, 2023-Ohio-1161, at ¶ 10 (2d. Dist.), citing *State v. Klosterman*, 2016-Ohio-232, ¶ 15 (2d Dist.).

{¶26} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "To find plain error, we must conclude (1) there was an error, i.e., a deviation from a legal rule, (2) the error was plain, i.e., an obvious defect in the trial proceedings, and (3) the error affected substantial rights, i.e., the outcome of the proceedings." *Torres* at ¶ 33, citing *State v. Barnes*, 2002-Ohio-68, ¶ 20; *see also Hambidge*, 2025-Ohio-1944, at ¶ 18 (2d Dist.). "In other words, the defendant must demonstrate a reasonable probability that the error resulted in prejudice, which is the same deferential standard for reviewing ineffective assistance of counsel claims." *Id.*, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶27} "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at ¶ 21, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus; *see also United States v. Olano*, 507 U.S. 725, 736 (1993) (suggesting that appellate courts correct a plain error "if the

error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,'" quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). Therefore, plain error may be found when a defendant does not receive fundamental due process as such a circumstance has a direct bearing on the fairness of a judicial proceeding.

{¶28} Mosier asserts that his due process rights were violated when the trial court failed to hold two separate hearings. At least one appellate district has held otherwise, concluding that there is no due process violation when a trial court conducts a separate probable cause hearing and evidentiary merit hearing on the same day. *See Bedford Hts. v. Brisbane*, 2025-Ohio-42, ¶ 26 (8th Dist.). While both hearings are permitted to be held on the same day, a trial court must first find probable cause before transitioning to the final hearing and determining whether to revoke.

{¶29} It is undisputed that Mosier was provided notice of the claimed violations of community control. On November 6, 2024, the Portage County Adult Probation Department filed a motion to modify or revoke Mosier's community control sanctions. The filing detailed that Mosier "was unsuccessfully discharged from CATS." The motion was attached to the summons ordering Mosier to appear before the trial court on the probation violation of November 8, 2024. It is also undisputed that Mosier was present for the hearing and that the trial court apprised Mosier of the basis of the request to revoke. In other words, Crim.R. 32.3(A) was satisfied and the record demonstrates that appellant was aware of the nature and basis of the violation.

{¶30} At the hearing on the motion to revoke community control, the trial court disclosed the evidence against Mosier. The following exchange occurred at the beginning of the hearing:

Case No. 2024-P-0080

[DEFENSE COUNSEL]: Your Honor, in discussing this with Mr. Mosier, he didn't complete CATS, but –

THE COURT: Not only did he not complete it, he got kicked out.

[DEFENSE COUNSEL]: Well, as I say, I don't know why that was. He isn't able to share that with me.

THE COURT: I can tell you. Do you want me to read it?

[DEFENSE COUNSEL]: He thinks it was because he was evaluated for both drugs and mental health and the evaluation came -- in his mind, came back with he doesn't have a drug problem so why is he there.

THE COURT: Yeah, that's not why. Let's read this.

"Mr. Mosier has been uncompliant with treatment recommendations that will aid us in helping diagnosis.

Scott has not signed a release of information for his mother or significant other when prompted. This has been requested so we can investigate further mental health symptoms and history due to the client being an unreliable reporter.

Scott has been unable to provide us with his psychiatrist information or the hospital he was at for his mental health.

This causes us to be unable to investigate his symptoms, validity and other history surrounding mental health and substance abuse."

It goes on and on, but he had to discharge him and I'm – he's violated his community control that was a gift.

So go ahead, Mr. Fehr.

DEFENDANT: I didn't know.

THE COURT: Oh, my gosh. Stop it. Go ahead, Mr. Fehr.

{¶31} The trial court then proceeded directly to the final revocation hearing without making a probable cause determination. Mosier argues that the trial court erred or otherwise abused its discretion when it did not allow defense counsel or Mosier to

Case No. 2024-P-0080

expound on the alleged violation. Indeed, the trial court interjected at the outset when defense counsel attempted to offer a response to the violation. The trial court later stopped Mosier for offering additional statements and determined Mosier violated his community control sanctions without allowing Mosier an opportunity to be heard.

{¶32} The trial court inquired whether Mosier was still at CATS. Mosier responded "I am no longer at CATS." We recognize that Mosier was required to successfully complete CATS as a condition of his community control. It is clear from the record before us that Mosier did not successfully complete the program as requested. However, such clarity does not otherwise permit a trial court to short-cut due process and procedural requirements when revoking community control. Mosier's confirmation that he was no longer at CATS is not tantamount to a waiver of his due process rights.

{¶33} In a procedurally similar case, the Second District Court of Appeals found plain error where a trial court "rolled through" the adjudicatory process without determining if the defendant was waiving known rights. *State v. Harmon*, 2008-Ohio-6039, ¶ 22 (2nd Dist.). The appellate court explained:

> The record fails to demonstrate that Harmon knew that she had the right to be heard in person during adjudication, to dispute probable cause and the merits of the violation, to present evidence and mitigation and to confront any adverse witnesses who may have testified. In a process that was far from flexible, the trial court rolled through the adjudicatory phase of the hearing to disposition without addressing Harmon directly and determining if she was intentionally waiving known rights. In other words, the deprivation of Harmon's liberty interest did not comport with the standards which due process of law imposes. [*State v.*] *Blakeman*[, 2002-Ohio-2153 (2d Dist.)]. We agree with Harmon that she was deprived of her right to due process, and we find that this procedural error rises to the level of plain error.

*Harmon* at ¶ 22; see also, *State v. Bentley*, 2023-Ohio-1708 (9th Dist.).

Case No. 2024-P-0080

{¶34} The Second District's focus on the due process rights of a defendant, including the right to be heard in person, to challenge the probable cause, to present evidence, and confront the prosecution's witnesses is instructive. The record in this case is devoid of any indication that Mosier intentionally waived his known rights. Indeed, the record suggests Mosier was attempting to exercise his right to be heard on the violation. Further, Mosier was not given a full and complete opportunity to challenge the basis of his dismissal from CATS prior to the trial court's determination that Mosier violated his community control. *See*, *State v. Roberts*, 2017-Ohio-481, ¶ 27 (2nd Dist.).

{¶35} As such, we conclude that the trial court failed to comply with the due process requirements set forth in *Gagnon v. Scarpelli*, 411 U.S. 778, 786. We further conclude that the error amounts to plain error as such error was a deviation from a legal rule, was an obvious defect in the proceedings, and affected Mosier's substantial rights and seriously affects the fairness, integrity or public reputation of judicial proceedings.

{¶36} As such, Mosier's sole assignment of error is meritorious.

## Conclusion

{¶37} For the reasons set forth above, we reverse the judgment of the Portage County Court of Common Pleas and remand this matter for further proceedings consistent with this court's opinion. The trial court should 1). hold a hearing and make a probable cause determination; and 2). if necessary, hold an evidentiary merit hearing wherein Mosier can fully exercise his due process rights.

JOHN J. EKLUND, J.,

SCOTT LYNCH, J.,

concur.

Case No. 2024-P-0080

## JUDGMENT ENTRY

For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with the opinion.

Costs to be taxed against appellee.

_____
PRESIDING JUDGE ROBERT J. PATTON

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-P-0080